UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

E.A.M.M.,[1]

Petitioner,

v.

ACTING OR CURRENT WARDEN, FACILITY ADMINISTRATION GEO GROUP INC, et al.,

Respondents.

Case No. 5:26-cv-03480-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**

**A# 240-888-603**

E.A.M.M. ("Petitioner"), then-proceeding *pro se*, filed a verified Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and a motion for temporary restraining order ("TRO"), seeking immediate release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California. Dkt. Nos. 1. 2. The Court has considered the Petition, Respondents' answer, and Petitioner's traverse. Dkt. Nos. 16, 19.

---

[1] The Court concurrently grants Petitioner's motion to proceed with pseudonym, Dkt. No. 3, herein.

## I. Background

The Court incorporates by reference, the allegations set forth in the Petition. Dkt. No. 1.

## II. Discussion

As an initial matter, the Court notes that Petitioner's I-213 form states that when he was re-detained by Immigration and Customs Enforcement ("ICE"), he was being processed as a "Custody Redetermination under the Laken Riley Act." Dkt. No. 16 at 7. The Laken Riley Act provision states in relevant part:

> The Attorney General shall take into custody any alien who-- . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E)(ii). "Serious bodily injury" has the same meaning given such a term in the jurisdiction where the acts occurred. *Id.* § 1226(c)(2). Further, 8 U.S.C. § 1226(c)(3) instructs authorities to "effectively and expeditiously take custody" of any noncitizen described in paragraph (1)(E) if the individual is not already in federal, state, or local custody. Courts have interpreted the present-tense language "is arrested" to only apply when the detainee was presently arrested by authorities when ICE detained them. *See Martinez v. Markwayne Mullin et al.*, No. 5:26-cv-03805-BFM, 2026 WL 2111747 at *4 (C.D. Cal. July 20, 2026) (collecting cases). Here, Petitioner was not arrested by local authorities when ICE re-detained him, no charges were pending, and he has no convictions; instead, Petitioner was arrested at

his scheduled ICE check-in. *See id.* ("Petitioner *was* arrested for grand theft. But because he was released, and no charges bought, it would not be natural to say that he 'is arrested' for the crime of grand theft. To the contrary, the statute's language is most appropriately read to mean that detention was mandatory only so long as Petitioner was under arrest—except to the extent that those charges were resolved in a way that triggered one of the other clauses of the statute.") (emphasis in original). Respondents do not contend in their answer that Petitioner is detained under the Laken Riley Act, since they do not oppose him receiving a bond hearing under 8 U.S.C. § 1226(a). Dkt. No. 16 at 4. Therefore, Petitioner's detention does not fall under the Laken Riley Act.

Petitioner is detained under 8 U.S.C. § 1226(a). Pursuant to 8 U.S.C. § 1226(a), on a warrant authorized by the Attorney General, a noncitizen may be arrested and detained pending a decision on whether the noncitizen is to be removed from the United States. 8 U.S.C. § 1226(a). Subject to exceptions not applicable here, ICE may continue to detain the noncitizen or may release them on a bond with security and conditions, or on conditional parole. 8 U.S.C. § 1226(a)(1), (2). At any time, that bond or parole may be revoked and the noncitizen rearrested under the original warrant and detained. 8 U.S.C. § 1226(b).

When the noncitizen is arrested pursuant to § 1226(a), ICE makes an initial custody determination, including consideration of a bond. 8 C.F.R. §§ 236.1(c)(8), 236.1(d). ICE may, in its discretion, release the noncitizen provided they demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons and that the noncitizen is likely to appear for any future proceeding. 8 C.F.R. § 236.1(c)(8).

Turning to the merits, the Petition raises three claims under the Administrative Procedure Act, procedural due process, and substantive due

process. Petitioner argues that his re-detention without notice and a pre-deprivation hearing violated procedural due process. Respondents argue that the Immigration and Nationality Act ("INA") does not provide for pre-deprivation process and ICE's decision to revoke his parole was discretionary and based on the recent arrest for domestic violence. Respondents do not oppose an order granting a bond hearing under 8 U.S.C. § 1226(a). However, for the reasons discussed below, the Court finds that Petitioner is entitled to greater relief: release.

### A. Procedural Due Process

Courts in this District and others have found that re-detention, without notice or a pre-deprivation hearing, of a noncitizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process. *See Cruz v. Lyons, et al.,* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in). *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1. Private Interest

Petitioner has a substantial private interest in remaining out of custody. Petitioner has resided in the United States for over five years—since May 2021, when, after seeking asylum, he was granted conditional parole by immigration authorities and released into the country. Petitioner's Form I-213, which Respondents attached to their answer, reflects that Petitioner was paroled into the United States on May 28, 2022, pursuant to 8 U.S.C. § 1182(d)(5). Dkt. No. 16 at 6.[2] Once released, Petitioner consistently complied with all government directives, attended regular check-ins, resided in Los Angeles, and built strong ties to the community. Petition at 3. He has a work authorization (valid until 2029), has held steady employment, and has been promoted multiple times. He has filed yearly state and federal income taxes with his Social Security since his arrival. Petitioner also has a brother who resides in the U.S. lawfully. *Id.* at 3–4. Petitioner was re-detained without notice at his ICE check-in on June 1, 2026.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal.

---

[2] The Court notes that the I-213 states that Petitioner entered the United States in 2022, rather than 2021. The difference is immaterial to the analysis herein since the Court concludes that regardless, Petitioner has a substantial liberty interest in remaining out of custody.

2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Respondents argue that conditional parole under 8 U.S.C. § 1182(d)(5) is temporary and can be revoked when, in the opinion of the Secretary of Homeland Security, the "purposes" of parole "have been served". Dkt. No. 16 at 3. However, courts have found that noncitizens paroled into the United States under 8 U.S.C. § 1182(d)(5) have a liberty interest protected by the Fifth Amendment Due Process Clause, particularly where the noncitizen has been living in the United States on such parole for years. *See, e.g.*, *Medrano-Rocha v. Santacruz*, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026) ("While the Government's initial decision to parole Petitioner was discretionary, *see* 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an 'implicit promise that parole will be revoked only if he fails to live up to the parole conditions.'"); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

The Court therefore concludes that—consistent with decisions from this District and others—the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at *3; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on

parole"); *Fernandez Lopez v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk). Here, Respondents do not contend that Petitioner has received a bond hearing since being re-detained on June 1, 2026; therefore, the Court concludes no bond hearing has taken place.

Further, in evaluating this risk, courts that have ordered release and a pre-deprivation hearing have considered the petitioner's compliance with all release conditions and criminal history. *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609 at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any hearing or interview); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539 at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").

Petitioner's I-213 form reflects a domestic violence arrest on May 21, 2026 under California Penal Code § 273.5(a).[3] Dkt. No. 16 at 7. This appears to be his only criminal history. According to the I-213 form, the disposition of the arrest is "pending." *Id.* The I-213 form also reflects that ICE took Petitioner into custody on June 1, 2026 (at his scheduled check-in) due to this arrest. *Id.* at 6. However, the I-213 form does not provide any underlying information about the arrest. Petitioner contends, in his verified Petition, that, as a result of his unhealthy relationship with his spouse, he called the police on multiple occasions due to domestic violence.[4] Petitioner alleges he was arrested twice due to discredited allegations made against him, and that the District Attorney did not prosecute any charges due to lack of evidence, and substantial evidence showing that Petitioner was the victim. Petition at 4. Respondents do not provide any evidence to rebut this information. Further, Petitioner's counsel declares that he inquired about the May 21, 2026 arrest to the Van Nuys branch of the Los Angeles County District Attorney's Office ("D.A"), and particularly Respondents' assertion that Petitioner's criminal matter was "pending." A receptionist at the D.A.'s office informed Petitioner's counsel that the D.A. had not filed charges related to the May 2026 arrest. Dkt. No. 19 at 10, Aminoff Decl. ¶ 3. Respondents' argument that Petitioner's arrest warranted his re-detention is not persuasive in light of Petitioner's verified statements regarding the context of the arrest, the evidence that the District Attorney did not prosecute due to lack of

---

[3] Cal. Penal Code § 273.5(a) provides that "[a] person who willfully inflicts corporal injury resulting in a traumatic condition upon a victim described in subdivision (b) is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000), or by both that fine and imprisonment."

[4] Petitioner alleges he was in a long-term relationship with this U.S. citizen individual for four years; they were married on January 19, 2026. Petition at 4.

evidence, and the fact that no contrary evidence was provided by Respondents. *See also N.M. v. Warden of the California City Corr. Ctr.*, No. 2:26-cv-01270-TLN-AC, 2026 WL 1846742 at *3 (E.D. Cal. June 26, 2026) ("[R]equiring mandatory detention [under 8 U.S.C. § 1226(c)] for a mere arrest where prosecutors declined to press charges, or for charges later resolved by acquittal or dismissal, raises serious due process concerns.").

Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Further, Petitioner's release was predicated on the Government's determination that Petitioner did not present a danger or flight risk requiring his detention. *See* 8 C.F.R. § 212.5 (permitting release on parole under 8 U.S.C. § 1182(d)(5)(A) in limited circumstances, "provided the aliens present neither a security risk nor a risk of absconding"). Since then, Petitioner has established substantial ties with the community and has complied with all reporting requirements, and directives by the government. In fact, Petitioner was detained by ICE after reporting at his check-in appointment at the ICE office in Los Angeles—further demonstrating that he was complying with immigration requirements.[5]

Based on the record, there is a high risk that the lack of pre-deprivation process—that is, a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary re-detention.

---

[5] Furthermore, Petitioner alleges he suffers from a life-threatening disease that requires him to receive an injection every two months so he will not get ill and die; he fears that his detention will cause him to miss his injection and result in his untimely death. Petition at 5. In fact, Petitioner had an important dental procedure scheduled on June 5, 2026 that he missed due to his current detention. *Id.*

### 3. Government Interest

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a predetention hearing." *Cruz*, 2025 WL 4051129 at *4 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]' " *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that Respondents' lack of constitutionally adequate procedures has resulted in his unnecessary detention, and any government interest in refusing to provide such process is minimal. The Court therefore concludes that the Government's detention of Petitioner without adequate pre-deprivation process violated due process. Because the Court concludes that Petitioner is entitled to release on procedural due process grounds, it declines to address Petitioner's remaining claims. Nothing prevents Petitioner from raising these claims again in the future, should the Government re-detain Petitioner following the procedures set forth above.

## III. Conclusion

The Petition is granted based on procedural due process, and the remaining claims are dismissed without prejudice. The prayer for relief requests an order enjoining Respondents "from re-detaining, and revoking conditional parole . . . unless changed circumstances and proper procedures are followed such as advanced notice and chance to contest detention by a neutral adjudicator." Petition at 17. However, the Petition fails to provide a legal and factual basis for ordering such prospective relief at this time.

## IV. Motion to Proceed with Pseudonym [Dkt. No. 3]

The Court grants Petitioner's motion to proceed under pseudonym, Dkt. No. 3, given the sensitive personal and medical information contained in the Petition, Petitioner's fear of retaliation in his home country and elsewhere, and finding that the government will not be prejudiced, and that anonymity would not obstruct the public's interest in the case. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).

## V. Order

For the foregoing reasons, the Petition is GRANTED under procedural due process, and the remaining claims are dismissed without prejudice. Accordingly, the Motion for TRO is denied as moot, Dkt. No. 2. The motion to proceed with pseudonym is GRANTED. Dkt. No. 3. The parties will file versions of the pleadings redacting Petitioner's name; thereafter, the Court will order the unredacted pleadings to be under seal.

Petitioner E.A.M.M. (A# 240-888-603) is **ordered released** within 24 hours of this Order on the same conditions of release that existed before his re-detention.

At the time of release, **Respondents are ordered** to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report (1) confirming Petitioner's release, and (2) confirming the return to Petitioner of his personal belongings, including the above-listed items.

IT IS SO ORDERED.

DATED: September 3, 2026

Patricia Donahue
United States Magistrate Judge